In the Matter of the Estate of Violet Bidwill
Wolfner, Deceased.
Walter H. S. Wolfner, Claimant-Appellant, v. Charles
W. Bidwill, Jr., Executor of the Estate of Violet
Bidwill Wolfner, Deceased, Respondent-Appellee.

Gen. No. 49,852.

First District, Second Division.

May 4, 1965.

Rehearing denied May 25, 1965.

Sears, Streit & Dreyer, of Chicago (Barnabas F. Sears and John E. Dreyer, of counsel), for appellant.

Thomas D. Nash, Jr., and Robert M. Ahern, of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from an order entered in the Probate Division of the Circuit Court of Cook County dismissing appellant's claim against the Estate of Violet Bidwill Wolfner for $11,890.18.

The appellant is the husband of the deceased, having married her on September 28, 1949. The claim filed by the appellant states that he and the decedent lived together at 1004 Michigan Avenue, Wilmette, Illinois, from the time of their marriage until Mrs. Wolfner's death. The claim alleges that though the title to the Wilmette property was held in the name of the decedent, Wolfner was the owner of a $50,000 equity in the premises because of money he had advanced toward the purchase price. The money claimed in this action is alleged to have been spent by the appellant in preserving this home and the personalty inside it until the administration of the estate actually commenced.

A certain amount of background information is necessary to understand this claim. Before she married a second time, Mrs. Wolfner was a woman of great wealth whose property included, among other things, the Chicago Cardinals Football Club. She and her first husband adopted two sons, Charles W. Bidwill, Jr. and William V. Bidwill. After the death of Charles W. Bidwill, Sr., the decedent married the appellant,

Walter H. S. Wolfner. From all appearances her second husband and his stepsons did not get along.

Upon decedent's death, Charles W. Bidwill, Jr., and William V. Bidwill presented for probate her Last Will and Testament. Under the terms of this will she bequeathed to her husband a life interest in the income from certain oil wells, and left the rest of her property to her sons whom she also named as executors of her will. William V. Bidwill was disqualified from serving as executor since he is not a resident of Illinois.

A proof of heirship was made finding the appellant to be the husband of the decedent and Charles and William Bidwill to be her natural born sons. At that time neither son knew he had been adopted in infancy. This order was contested by the appellant on the basis that Charles and William were not decedent's natural born sons, but were adopted, and that such adoptions were void because the court which granted them did not have jurisdiction over the subject matter. This court affirmed the order of the Probate Court upholding the adoptions and finding Charles and William to be decedent's heirs at law together with appellant.

Following this, appellant contested the admission of the will to probate and the appointment of Charles W. Bidwill, Jr., as executor. The Probate Court admitted the will and appointed Charles executor on May 4, 1962. Appellant filed with the court a supersedeas bond pursuant to chapter 110, sec 82, Ill Rev Stats, 1961, pending an appeal to the Illinois Supreme Court. That court affirmed the order of the Probate Court on March 27, 1963. The only claim made on this appeal is that the appellant is entitled to be reimbursed for expenses he incurred in preserving the estate up to the time the Illinois Supreme Court affirmed the appointment of Charles W. Bidwill, Jr., as the executor of his mother's estate. The great bulk of this expense

went to pay one Joseph Pennino as a caretaker for the home at 1004 Michigan Avenue. This home was a 25-room mansion on the lake front and contained a great deal of valuable personal property. Decedent's clothing alone brought $38,000 when sold at auction. The other personal property in the house is still the subject of litigation as to whether the ownership of these items was in the decedent or the appellant.

The salary to the caretaker was a certain amount in cash, plus room, board, laundry and other living expenses. The cash part of the salary had always been paid by the Chicago Cardinals Football Club, although Pennino never rendered services for that organization. When, after the death of Mrs. Wolfner, the caretaker refused access to the house to Mrs. Charles W. Bidwill, Jr., he was fired by the Chicago Cardinals. The appellant then hired Pennino to stay on the premises at the same compensation and protect both the real and personal property thereon. During this period no one but the caretaker lived on the premises. Wolfner moved to St. Louis shortly after his wife's death and stayed at the Michigan Avenue address only on some weekends when he came to Chicago.

Appellant claims he is entitled to be reimbursed for the expenses he incurred in hiring this caretaker. He points out that shortly after the filing of the will for probate, he had on file a petition to appoint an administrator to collect. Hearing on this petition was continued by the court until the affirmance of the admission of the will to probate by the Supreme Court whereupon the petition became moot. It is his theory, therefore, that "until the status of Charles W. Bidwill, Jr., as executor of this estate was finally determined, appellant, as surviving spouse, had the right and duty to safeguard and preserve the assets of the above-entitled estate and that funds reasonably expended in so doing are a proper charge against the estate."

426

Appellee's theory on the other hand is that "the right, duty and obligation to make expenditures for the preservation of the estate was vested solely in the executor, Charles W. Bidwill, Jr.; that, as a party to the probate proceedings, it was not permissible for the claimant, Walter H. S. Wolfner, on his own initiative and without any authority or direction from either the executor or the Probate Court to make such expenditures and, having failed to obtain such authority, he is a volunteer and not entitled to reimbursement by the estate."

The appellee also claims that the complaint does not distinguish between the amounts spent for preserving the realty and that which was spent to preserve the personalty. It is pointed out that the Probate Court does not have such jurisdiction over realty as would enable it to reimburse appellant for his expenses in preserving it. Finally, the appellee claims that the estate cannot be held liable for monies paid by the Wolfner Construction Company, a total stranger to the probate proceedings.

■ It is clear that formal pleading in the presentment of a claim is unnecessary. Ch 3, sec 192 Ill Rev Stats, 1963. All that section requires is that the nature of the claim be set forth and that the claim be sworn to by someone having knowledge of the facts. In the case before us no allegations of fact are made upon which the claim is based, and no distinction has been made between money advanced in preservation of the personal estate and money which was advanced to preserve the realty. However, if appellant was entitled to recover any portion of the money he paid his entire claim should not have been dismissed. There should have been a hearing to determine on which part of his claim the court should have allowed recovery. The question is, therefore, whether this appellant can recover anything from the estate for the expenses he incurred.

■ We have studied the question quite carefully and have come to the conclusion that this claimant cannot be permitted to recover. The attorneys for the parties have been unable to find any Illinois authority which has any direct hearing on this problem, nor have we been able to find any. This problem is a rare one, for in almost every instance where an appeal is taken from the appointment of an executor the court will appoint an administrator to collect, if he is so asked. In the case at bar, the appellant asked the court below to appoint such an administrator and he was refused. The cases which have been cited by the appellant state that when an appeal is taken from the appointment of an executor, his powers cease and the preservation of the assets of the estate is in the hands of an administrator to collect or a special administrator. For example, the appellant cites Louisville Trust Co. v. Fidelity and Columbia Trust Co., 272 SW 759, 209 Ky 289 (1925). In that case the Court said that when there is an appeal from the appointment of an executor, a special administrator, if anyone, should protect the estate.

In re Hultan's Estate, 178 P2d 756, 29 Cal2d 825 (1947), cited by the appellant, held that when an appeal is taken from the appointment of an executor, his powers cease and the court should appoint a new special administrator. In re Weaver's Estate, 224 P2d 1004, 170 Kan 321 (1950), also cited in appellant's brief deals with the question of necessary parties and is not authority for the question before us now.

The sum of all these cases is that the Probate Court should have appointed an administrator to collect. Ch 3, sec 105, Ill Rev Stats 1963, Schenk v. Schenk, 80 Ill App 612 (1899). Obviously these cases do nothing to answer the question before us. The court below did not appoint an administrator to collect, and we must decide who, if anyone, had the responsi-

428

bility to protect the estate while the appeal concerning the appointment of the executor was pending.

■■ We feel that under the circumstances before us, the executor was the person with the power and responsibility to preserve the estate assets. The law is settled beyond any dispute that the findings of a trial court are presumed correct. Danile v. Oak Park Arms Hotel, 55 Ill App2d 2, 203 NE2d 706 (1965); O'Berry v. O'Berry, 36 Ill App2d 163, 183 NE2d 539 (1962). Even the appellant does not claim that his taking the appeal removed Charles Bidwill from his position as executor. His only claim is that while the appeal is in progress, the executor did not have the power to act, and that, therefore, the appellant was proper in his actions to preserve the estate.

We would agree with the appellant insofar as an executor's power would be held in abeyance during the pendency of an appeal if there had been appointed an administrator to collect. As noted before, however, no such administrator was appointed here. The rationale behind all the opinions dealing with the problem is that the executor should not be allowed to settle claims, sell estate property and the like only to have it turn out that he did not have the power to do so. We agree, but we are here dealing with a problem of preserving the estate, not the settlement of claims.

We hold, therefore, that when no administrator to collect has been appointed, an executor has the power to take reasonable measures to preserve the estate from waste or depletion while an appeal from his appointment is pending. If any party in interest wishes to have an administrator appointed during this period, the Probate Court should accede to his wish.

■■ As an alternative ground for affirming the court below, we hold that under the circumstances presented by this case, the appellant could not create

debts chargeable against the estate without the consent of the Probate Court. That court has the responsibility of overseeing the administration of estates and of approving the actions of the executor or administrator before he can be discharged. A person should not be allowed to take part in the management of an estate unless he is under the supervision of the Probate Court. In the case at bar, the executor had tried to gain possession of the premises, but had been locked out by the appellant. It is clear, therefore, that the executor was perfectly willing to take the management and preservation of the estate upon himself, and that there was no need for the appellant to undertake to preserve the house from vandals and thieves. But had the executor not been willing to act, the appellant should not have undertaken the preservation of the estate without the approval of the·court. To allow otherwise would be to allow any heir or potential heir to take it upon himself to preserve the estate whenever the executor might be challenged and before the Probate Court could appoint an administrator to collect. This hypothetical heir might be exactly the type of person whom we do not want managing an estate. He might be an improvident, stupid or dishonest person who would spend money unnecessarily and then come into court to seek reimbursement. What we are seeking is to have the Probate Court supervise the administration of estates. We do not want volunteers rushing in to act wisely or unwisely as the case may be, without the supervision of the court.

For the reasons set forth in this opinion, the order of the Circuit Court is affirmed.

Order affirmed.

- BURKE, P. J. and LYONS, J., concur.