VINCENTE GATICA, Plaintiff-Appellant, *v.* THE DEPARTMENT OF PUBLIC AID, Defendant-Appellee.

First District (2nd Division)    No. 80-1246

Opinion filed June 30, 1981.

Righeimer, Righeimer & Martin, P. C., of Chicago (David A. Martin and Leo N. Cinquino, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Sandra L. Andina and James C. O'Connel, Special Assistant Attorneys General, of counsel), for appellee.

Harry L. Kinser, Kenneth C. Robbins, and Jeffrey W. Maysent, all of Chicago (McLaughlin, Kinser & Bryant, of counsel), for *amicus curiae* Illinois Hospital Association.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Vincente Gatica was admitted as a patient to the Illinois Masonic Medical Center (hereinafter IMMC) on February 10, 1979. He thereafter applied for medical aid from the Illinois Department of Public Aid (hereinafter IDPA) under article V of the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 5—1 *et seq.*) (hereinafter Public Aid Code). At the time, he was not a public aid recipient; he had no health or hospitalization insurance; and he had no funds with which to pay the hospital bills. After his death, IDPA denied Gatica's application for aid. He was alleged to have empowered an IMMC employee, Noemy Martinez, who was in charge of medical assistance applications, to be his authorized representative in all matters relating to his application for medical aid. After the denial of Gatica's application, IMMC sought to contest IDPA's decision at a departmental hearing which IMMC requested. At the conclusion of the IDPA hearing, the hearing officer held that IMMC had not been properly authorized to represent Gatica at the hearing; dismissed the claim solely on that basis; and refused to consider the merits of the claim. IMMC filed a complaint in the circuit court for administrative review. The trial court, after appointing IMMC special administrator, affirmed on the ground that medical benefits under the Public Aid Code abate at death.

The issues presented to this court by IMMC are whether potential rights to medical aid benefits under article V, which have been applied for but not yet approved or denied, abate upon the death of an applicant; and whether IDPA improperly denied IMMC the opportunity to present the merits of Gatica's claim at the departmental hearing. For the following reasons, we reverse the decision of the trial court and remand this cause to IDPA for further proceedings consistent with our decision.

The stated purpose of article V of the Public Aid Code is to establish a program of essential medical care for persons who, because of inadequate financial resources, are unable to meet their essential medical needs. For persons who are medically indigent, but are otherwise able to support themselves with a livelihood, it is of special importance to maintain their incentives for continued independence, among other objectives. (Ill. Rev. Stat. 1979, ch. 23, par. 5—1.) Toward this end, the legislature created the program outlined in article V setting forth the procedures by which application can be made by an indigent for aid, and by the vendors of medical services for subsequent reimbursement. Implicit in this legislative action was the recognition that a necessary and practical incentive was needed to motivate vendors of medical services to promptly and willingly treat the indigent population by assuring the reimbursement of expenses advanced by such providers.

IMMC is a private, not-for-profit hospital located in Chicago which serves, *inter alia*, a large Hispanic community. Approximately 57 percent of all IMMC's patients receive medical services funded by State or Federal programs.[1] When Gatica was admitted to IMMC for a lung disorder and indicated that he had no health insurance or savings, he was examined, treatment was begun and he completed an IDPA standard form application for medical assistance. That form was forwarded to and received by IDPA within five days, on February 15, 1979. Gatica died while a patient at IMMC on March 1, 1979, after receiving over $13,000 in medical treatment. At this time, his application had not been completely processed by IDPA. On June 4, 1979, IDPA sent a notice to the deceased Gatica's home and to IMMC stating that the application was denied because "applicant could not be located" for further inquiry concerning the application.

On June 20, 1979, IMMC sent a notice to IDPA seeking a departmental hearing in order to contest the denial of the application. On July 13, 1979, a hearing was conducted before an IDPA hearing officer. Noemy Martinez, the representative of IMMC, stated that she was "authorized" by Gatica to request this administrative hearing. As Gatica had no living relatives to represent him, she completed the hearing application form on

---

[1] This information was contained in IMMC's appellate brief and is not contested by IDPA.

June 20, 1979, and signed it "patient unable to sign." The hearing officer asked if she had any written authorization signed by Gatica and she responded only that Gatica had signed the "applications" for aid. She stated that IMMC had informed IDPA on March 27, 1979, of Gatica's death and it was after his death that IDPA denied the application.

Lewis Cornwall, a representative of IDPA, then advised the hearing officer that on May 27 and 30, 1979, inquiries were sent to Gatica's home address but were returned to IDPA by the post office. If an applicant dies before the application is processed, the department continues to evaluate the application. If IDPA is unaware that an applicant has died, however, it simply awaits a response to the inquiries. Gatica's application was denied because there was no reply to the inquiries sent to his home.

The hearing officer elicited no testimony concerning the merits of Gatica's application. Martinez asked for a hearing continuance in order to submit additional documents, which the officer denied. Several times during the hearing Martinez indicated that more than one "application" had been completed by Gatica.[2] On August 10, 1979, the officer's written findings and IDPA's final decision were sent to Martinez, dismissing the appeal for "want of jurisdiction" because IMMC's authorization to contest the denial had not been demonstrated. The cover letter directed that this administrative decision could be reviewed only through the circuit court.

On September 13, 1979, a complaint was filed by IMMC in the circuit court of Cook County, seeking administrative review of IDPA's ruling (Ill. Rev. Stat. 1979, ch. 23, par. 11—8.7) "on the behalf of" Gatica, the captioned plaintiff. The complaint, alleged, *inter alia*, that the ruling of the IDPA hearing officer was against the manifest weight of the evidence. IDPA answered by filing a copy of the July 13, 1979, hearing transcript.

Before the trial court, IMMC argued that Gatica's right to aid did not terminate at his death and that IMMC was authorized to represent him. IMMC stated that a blank authorization form had been signed by Gatica. Because the form required the date of denial, this information had not been filled in since Gatica expired before the denial. IMMC asserted that the signed form had not been brought to the department hearing because it was incomplete. IDPA objected that the blank authorization form could not be considered by the trial court because it had not been introduced at the administrative hearing. IMMC moved to be appointed as special administrator by the court for Gatica under section 54(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 54(2)) which the trial court

---

[2] We note at this point that some portions of the transcript were incomplete and other portions were incoherent and unintelligible. Numerous questions by the hearing officer and answers by Martinez and Cornwall were designated "inaudible" in the transcript. Such deficiencies are a detriment to the reviewing process and should be rectified during the hearings from which they emanate, and after the transcripts are initially received by the parties.

allowed. The trial court then requested briefs concerning whether any potential rights of Gatica to medical benefits abated at his death. On March 27, 1980, the trial court announced its decision to affirm "for the sole reason that the entitlement of medical assistance abates at death."

■■ The trial court's ruling, that an applicant's potential entitlement to benefits abates solely because death occurs before a final decision, was in error. IDPA has so conceded on appeal. That the legislative intent is clearly contrary to such a ruling is apparent from a reading of sections 5—2, 5—6, and 1—15(2) of the Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, pars. 5—2, 5—6, and 11—15(2)). Section 5—2 provides that medical assistance shall be available to "persons * * * who fall sick, are injured, *or die*, not having sufficient money, property or other resources to meet the costs of necessary *medical care* or funeral and burial expenses." (Emphasis added.) Section 5—6 provides that obligations incurred but not paid for at the time of a recipient's death, for authorized services, may be paid " * * * *after the death of the recipient*." (Emphasis added.) Section 11—15(2) provides that an application for medical aid may be filed on behalf of a person who " * * * *died before an application was filed*." (Emphasis added.) This legislative language must be given its plain and ordinary meaning. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169), and it clearly demonstrates its intention that such claims are not to abate upon the death of an applicant who has received medical assistance by a provider such as IMMC. This conclusion is one reached by IDPA itself as reflected in its own written policies implementing the foregoing statutory provisions, and others. (See IDPA General Assistance Manual (1977), policies 235.1; 310.2; 310.3; IDPA Handbook for Hospitals (1979), H—281(3); H—282.) We therefore reverse the trial court's ruling concerning abatement, and find that such an action survives an applicant's demise.

■■ While conceding that Gatica's potential entitlement to benefits did not abate, IDPA argues that Gatica's legal right to administrative review abated because it is not listed in the survival section of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 27—6). IMMC correctly responds that the Administrative Review Act does not create a new cause of action or an independent remedy, but instead provides merely a method of review, a view supported by Illinois case law. (*Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli* (1977), 49 Ill. App. 3d 896, 900, 364 N.E.2d 449.) It would be logically inconsistent to create the right of an applicant to have his application evaluated subsequent to his death, yet deny the procedural right to review that evaluation. There is no question but that administrative decisions made under article V of the Public Aid Code are amenable to administrative review in the circuit court. Ill. Rev. Stat. 1979, ch. 23, par. 11—8.7.

Turning to the question of whether IMMC should have been allowed to present the merits of Gatica's claim at the IDPA hearing, we begin our analysis with a review of the relevant sections of the Public Aid Code and IDPA rules concerning the application and appeals procedure within the department. Under section 11—15 of the Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 11—15), an applicant must file a written request for aid with IDPA. Under section 11—15(2), an application for a minor, incompetent, or decedent may be filed "on behalf" of such persons. Applications "on behalf" of a decedent under this section are to be filed by the next of kin or a person "acceptable under the rules" of IDPA. IDPA policy 310.2 provides that in the case of a decedent, application can be made by "someone acting responsibly for him." Under IDPA policy 235.1, where an application has been denied, an appeal to an IDPA hearing officer can be made by the applicant, or an "authorized" representative. Rule 9.13 of the IDPA Rules and Regulations provides that in the case of a hospital seeking to pursue the appeal of an application denial, the hospital must have a "written, signed authorization designating the representative to act in this capacity." None of these rules, however, specifically provide for the circumstances which arose here, where the applicant made the initial application and died before the application was denied and therefore before authorization to appeal could have been given.

■■ At the departmental hearing, the hearing officer dismissed IMMC's appeal on the ground that written authorization had not been presented. IDPA claims on appeal that its ruling was not against the weight of the evidence and that, in any event, IMMC was not a proper party to represent Gatica in the review of this ruling before the trial court. IMMC claims that the administrative procedure it employed before the department in the present case had been previously acceptable; the refusal of the department to hear the merits of the claim was a departure from custom; and, the ruling was therefore arbitrary, unreasonable and capricious. Deference is generally to be accorded the decision of an agency on administrative review, yet the courts do not hesitate to intervene when the decision is against the manifest weight of the evidence or is arbitrary, unreasonable or capricious. (*Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406; *People ex rel. Stephens v. Collins* (1966), 35 Ill. 2d 499, 221 N.E.2d 254; *Environmental Protection Agency v. Pollution Control Board* (1976), 37 Ill. App. 3d 519, 346 N.E.2d 427.) An agency which has changed a previously existing construction, or application of a rule, or an informal practice, may be bound thereby as a result of the previous custom. (*Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 574-75, 385 N.E.2d 92; *Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 484-85, 370 N.E.2d 3; *Scheffki*

*v. Board of Fire & Police Commissioners* (1974), 23 Ill. App. 3d 971, 973-74, 320 N.E.2d 371.) An agency may not abruptly deviate from such prior rules with a respect to the applicability of a fundamental directive without prior notice of its intended change. *Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, 1055.

■■ Neither the trial court nor the IDPA hearing officer considered the question of a change in the department's customary practice, the latter because it considered a written authorization as mandatory and the former because it focused solely upon the abatement issue. The department hearing was therefore incomplete in this regard. In *Columbia Quarry Co. v. Department of Revenue* (1966), 34 Ill. 2d 46, 213 N.E.2d 497, our supreme court held that a court of review can remand a cause to an administrative body for further findings of fact where the facts elicited were insufficient to resolve the issues involved. (See also Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5); *Esner v. Board of Trustees* (1979), 68 Ill. App. 3d 541, 386 N.E.2d 288; *Shewmake v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 1052, 390 N.E.2d 536; *Hodges v. Board of Trustees* (1979), 73 Ill. App. 3d 978, 392 N.E.2d 417.) The record is replete with suggestion that IDPA had previously allowed hospitals to pursue a claim in this manner and, under such circumstances, basic fairness requires that this issue be considered on remand. *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 336-38, 328 N.E.2d 5; *Bacon v. Holzman* (N.D. Ill. 1967), 264 F. Supp. 120, 129; Ill. Rev. Stat. 1979, ch. 110, par. 275(g).

A close reading of the record further suggests that IDPA had recently changed the informal practice which had previously existed. The department rules, as previously discussed, do not specifically contemplate a procedure to contest a denial of an application through a representative where death occurs before that denial. The standardized IDPA appeal form implies that the authorization to appeal will be given subsequent to denial. It is hardly surprising that a hospital would not institute its own procedure for obtaining written authorization to appeal a denial which had not yet materialized. Thus, there was no formalized procedure for authorization of an appeal before a denial; and the probability that an informal process was occurring between hospitals and IDPA under such circumstances is bolstered by certain facts in the record. Martinez appeared at the hearing only prepared to proceed on the merits of Gatica's claim and the transcript indicates her surprise that some formal authorization was now required. As it later developed at the trial court, a standard appeals form in blank had been signed by Gatica prior to his death. Martinez' surprise coupled with her failure to bring this form suggest that this formalized procedure had not previously been employed. There is also evidence in the record that Martinez had mentioned the

existence of this form to the officer and suggested a continuance for the purpose of submitting additional documents, which was denied. If this was the case, IMMC was thereby precluded from even minimally complying with what appears to be the new procedure. Even if permitted to submit the form, the hospital would be faced with the anomalous situation of submitting a signed, but blank, appeal form, or, without knowledge of the applicant, who died since signing the form, filling in the form with such information as might satisfy an adherent to form over substance. We therefore remand to IDPA for additional consideration and findings concerning whether IDPA had previously employed an informal and more practical rule with which IMMC had complied, and whether IDPA is bound by this prior rule. See *Brennan Cattle Co. v. Jones* (1968), 41 Ill. 2d 260, 242 N.E.2d 192.

■■■ With respect to IDPA's related argument, that the complaint was improperly before the trial court because it was filed in the name of a nonentity, it appears that the complaint was filed after his death in Gatica's name in the circuit court. Thereafter IMMC moved to be appointed as special administrator for the estate of Gatica under section 54(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 54(2)). IDPA claims that section 54(2) has no application to this case because Gatica had died before the complaint was filed. We agree. (*Kasper v. Frank* (1972), 9 Ill. App. 3d 481, 292 N.E.2d 508; *Leick v. Phelen* (N.D. Ill. 1973), 367 F. Supp. 824.) Furthermore, although an estate may be settled without administration (Ill. Rev. Stat. 1979, ch. 110½, pars. 6—11 and 9—2), an action cannot be brought by a decedent (see, *e.g.*, *Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, 299 N.E.2d 435; *Reed v. Long* (1970), 122 Ill. App. 2d 295, 259 N.E.2d 411), and a creditor of the decedent cannot act for the estate unless qualified as an administrator under the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 10—1; *In re Estate of Wolfner* (1965), 58 Ill. App. 2d 423, 430, 207 N.E.2d 724). Thus, under traditional notions of jurisdiction, IDPA correctly contends that IMMC could not represent Gatica in the trial court unless an estate was opened and the action thereafter pursued by its administrator. Under the circumstances presented here, however, IDPA must be deemed estopped from asserting the nonexistence of a party for the purpose of this review. The record shows that IDPA had apparently dealt with IMMC as a party in interest under their informal procedure; it had disallowed a continuance, thereby precluding the tendering of any written authorization to appeal; and it had recommended that the only recourse to its disposition of the appeal was through administrative review. See *Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 358 N.E.2d 293.

Accordingly, we reverse the trial court's finding that medical benefits under article V of the Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par.

5—1 *et seq.*) abate after the death of a public aid applicant and remand the cause to IDPA for further consideration and findings with respect to whether IDPA had employed an informal procedure with regard to claims made by hospitals after the death of an applicant for services rendered to the applicant prior to death by which IDPA should be bound. (*Brennan Cattle Co. v. Jones*); IMMC had complied with that informal procedure; and consideration of the claim upon its merits should result in payment to IMMC. In the event IDPA should find that there was no informal procedure by which it was bound, application should be made to the probate court by an interested party for the appointment of an administrator under appropriate provisions of the Probate Act (*e.g.*, Ill. Rev. Stat. 1979, ch. 110½, pars. 9—1 *et seq.* and 10—1 *et seq.*), for the purpose of opening an estate so that the claims made by IMMC and any other claimants may be filed and adjudicated.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.