KENT JEWELRY CORPORATION et al., Plaintiffs, *v.* RICHARD A. KIEFER, Defendant.

Supreme Court, Special Term, New York County, May 21, 1952.

*Alan Palwick* for plaintiffs.

*Walter Herzfeld* for defendant.

HAMMER, J.   Under order of this court made May 2, 1952, this examination before trial is being conducted of defendant's agent, Michael S. Striker, as one familiar with the facts sought to be elicited.   The defendant has objected to certain questions on the ground that Striker is in the status of an attorney to the defendant as his client, and the matters sought are privileged confidential communications.

The action is by plaintiff for rescission on the grounds (1) of breach of warranty of title, and (2) of fraud in knowingly concealing that defendant's alleged title was defective.   Striker is a patent agent duly registered and authorized as such to practice before the United States Patent Office.   As such agent, acting for defendant and defendant's assignor, he presented the patent application and the matters incidental thereto to the Patent Office.   On this examination Striker testified he was not admitted to practice as an attorney in the courts of our State or the Federal courts; that the rules of the Patent Office prohibit a patent agent from holding himself out, or representing himself as an attorney, solicitor, or lawyer; and he did not hold himself out, or represent to the defendant, that he was an attorney, or solicitor or lawyer.

In section 11 of title 35 of the U. S. Code it is provided as follows:   " § 11. *Patent agents or attorneys; rules and regulations for; suspension or exclusion from practice.*

" The Commissioner of Patents, subject to the approval of the Secretary of Commerce, may prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing applicants or other parties before his office, and may require of such persons, agents, or attorneys, before being recognized as representatives of applicants or other persons, that they shall show that they are of good moral character and in good repute, are possessed of the necessary qualifications to enable them to render to applicants or other persons valuable service, and are likewise competent to advise and assist applicants or other persons in the presentation or prosecution of their applications or other business before the Office.   The Commissioner of Patents may, after notice and opportunity for a hearing, suspend or exclude, either generally or  in any particular case, from further practice before his office any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who refuses to comply with

the said rules and regulations, or who shall, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the office, by word, circular, letter, or by advertising. The reasons for any such suspension or exclusion shall be duly recorded. The action of the commissioner may be reviewed upon the petition of the person so refused recognition or so suspended or excluded by the district court of the United States for the District of Columbia under such conditions and upon such proceedings as the said court may by its rules determine.''

Therein (U. S. Code, tit. 35, Appendix, § 1.341) it is provided: '' Registration in the Patent Office under the provisions of the regulations in this part shall only entitle the persons registered to practice before the Patent Office.''

The order granting the examination required the following:

'' a. Any discussions with or communications to or from the defendant, or one acting on his behalf, during the period prior to November 28, 1950, on the subject of the necessity of obtaining approval of the United States Military Government or of the German Ministry of Economics for any transfer of rights under United States Patent Application No. 57073, United States Patent No. 2563831 or United States Patent No. 220255 from Emil Kiefer to Richard A. Kiefer, to plaintiffs herein, or to any others;

'' b. Any directions given by or on behalf of the defendant concerning measures to be taken or not to be taken to obtain such approval;

'' c. Any measures, steps or efforts taken by or on behalf of defendant to obtain such approval; ''

(All limited to the period prior to November 28, 1950.)

The order also provided that '' questions of privilege are reserved for the examination.''

The defendant asserts a common-law privilege and that under the statute.

The pertinent statute of New York is section 353 of the Civil Practice Act, which reads: '' An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person employed by such attorney or counselor be allowed to disclose any such communication or advice given thereon.''

The above was a re-enactment in the new act of section 835 of the Code of Civil Procedure, of which it took the place. The

provisions of that section in turn were the statutory restatement of the New York common-law rule. (See *Matter of King* v. *Ashley*, 179 N. Y. 281 [1904]; *LeLong* v. *Siebrecht*, 196 App. Div. 74 [2d Dept., 1921], and *Matter of Eno*, 196 App. Div. 131 [1st Dept., 1921].) It seems clear that Mr. Striker, as a " patent agent ", does not fall within the term " attorney " as used either in the New York common-law definition of privilege or in section 353 of the Civil Practice Act.

In *Williams* v. *Fitch* (18 N. Y. 546, 551 [1859]) the common-law rule was stated as follows: " communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence and entitled to protection as privileged communications."

In *Matter of King* v. *Ashley* (*supra,* p. 284 [1904]) it is stated that the Code section 835 was " a mere re-enactment of the common-law rule."

Defendant states that " it is true that our statute — C.P.A. Section 353 — refers in terms only to an attorney or counsellor at law." He adds by way of argument: " Yet, the privilege cannot be limited to persons entitled to this professional designation. Nobody would question that proctors in admiralty have equal status."

Obviously the term " proctor " has been used to denote the persons in various tribunals or courts such as admiralty, probate and ecclesiastic, who are advocates or attorneys. Indeed the word is defined as " an agent acting for another; an attorney * * * specif., a practitioner in an admiralty, ecclesiastical or probate court " (Funk & Wagnalls, New Standard Dictionary, p. 1976). Of course the relationship between such officers and their principals is that of attorney and client.

The defendant relies for authority in his objection taken principally upon statements of the distinguished author of Wigmore on Evidence (3d ed., 1940, Vol. VIII, § 2300-a). Following the thesis therein asserted defendant says: " *Dean Wigmore* points to the expansion of administrative jurisdiction in many fields and to the growth of certain bodies of specialized practitioners before such agencies. Inasmuch as the client is compelled to confide in such agents the same way he must in attorneys, Wigmore states that communications to such agents should be privileged in those cases where the agent has an official and formally supervised status." Many undoubtedly

agree with such a thesis. However, it cannot be concluded logically, even by a court of the widest general jurisdiction, that what reasonably should be the rule of law or procedure actually must be. Attorneys and counsellors and others of the legal profession with synonymous titles and their clients from other jurisdictions, when it is shown that the relation of attorney and client exists, are accorded such privilege in respect of confidential communications. But whenever that occurs, the rule is applied under the requirements of constitutional full faith and credit, the doctrine of comity or by a court as a matter of expediency.

In *Matter of Cunnion* (201 N. Y. 123, 128 [1911]) it was said: '' prior to September 1, 1877, the common law relating to disclosures of communications and transactions between attorneys and clients prevailed in this state, but from and after that date we have not only a statute (section 835, Code of Remedial Justice, now Code of Civil Procedure) relating to such disclosures, but also a statute (section 836 of said Code) defining when the statute relating to such disclosures shall apply.'' Obviously, the common law as it existed prior to September 1, 1877, could not have had within its purview patent agents or their relationship where acting for principals seeking patents for inventions. It was not until 1922 that representation by patent agents was recognized by law.

It is clear also that the requirement of an oath as one of the qualifications of becoming a patent agent does not bring the occupant within the attorney-client category. The privilege does not arise out of the attorney's oath although that may be an added reason for the client to repose complete trust in the attorney, confident that under the seal of professional secrecy he may fully communicate whatever the attorney requires. The protection arises out of the necessity of the client to state his cause fully in order that he and it will receive adequate professional representation. The interest of the client is mainly served but the interests of the public and of the courts are also served by having laymen thus represented. In this we agree with the Wigmore statement that when privilege exists '' the decision of this question turns mainly on the just interest of the party represented, not on that of the party appearing for him.'' (Wigmore on Evidence, Vol. VIII, § 2300-a.) However, if such a party discloses confidences to any agency other than to those designated in the statute or included by necessary implication in such designation, the privilege does not exist

in law and may not be accorded by judicial action. The statute as it now stands is the law which must be accepted by the courts. Change or amendment is the function solely of the Legislature.

Under the New York definition of the common-law rule, as re-enacted by section 353 of the Civil Practice Act, and also under the common law in other jurisdictions where the issue has arisen, patent agents have not been accorded the attorney-client privilege. (*Brungger* v. *Smith,* 49 F. 124 [U. S. Circuit Ct., Mass., 1892]; see, also, 24 Halsbury's Laws of England [2d ed., 1937], pp. 680–681.)

In *United States* v. *United Shoe Mach. Corp.* (89 F. Supp. 357 [U. S. Dist. Ct., Mass., 1950]), citing the *Brungger* case, WYZANSKI, J., dismissed a claim of privilege of patent agents, stating (p. 360): " Eight of the persons in the patent department are not members of the bar of any court. They are solicitors of patents who fall outside the privilege."

Even if the principal's communications to the patent agent necessary to prepare and present the patent application to the Patent Office could be regarded as coming within the privileged communications class, those which are here the subject matter of the examination cannot be so regarded. The communications required to be disclosed concern the necessity of obtaining the approval of the United States Military Government or of the German Ministry of Economics for any transfer of the patents to plaintiff herein. If Striker is in a position to give information on these matters, it cannot be said that he received this information within the scope of his employment as a patent agent. (Cf. *Chicago Bar Assn.* v. *Kellogg,* 401 Ill. 375 [Sup. Ct., Ill., 1948].) The recognition of the principle of such dual capacity is well established in New York. Where a licensed attorney is retained, any of his actions falling outside of his strictly legal capacity are not considered to be privileged matters. The privilege " has no application to communications made to the attorney outside the scope of his professional employment ". (*Rieser Co.* v. *Loew's,* 194 Misc. 119, 120 [Special Term, New York, 1948].)

So far as communications between attorney and client are concerned, the person consulted must be an attorney duly licensed by the State to practice law and the communication must be made for the purpose of professional advice. The privilege does not extend to communications made to an attorney who is acting as a business agent or real estate agent.

The many attempts made to create a privilege in favor of an additional class have not met with success. Our Court of Appeals has stated that " The tendency is not to extend the classes to whom the privilege from disclosure is granted, but to restrict that privilege." (*People ex rel. Mooney* v. *Sheriff of New York Co.,* 269 N. Y. 291, 295.)

Communications to a patent agent, even if protected by a limited privilege against disclosure, cannot grow into an enlarged privilege by act of the principal through the means of additional disclosures, even though the latter, if made to an attorney at law, would enjoy full privilege. To give any recognition to such an attempted extension, or claim thereof, by an individual (principal) would accord greater power to such individual than that resident in courts which are required to interpret and adjudicate as the law exists and has been enacted by the Legislature. The objections are overruled. Let the examination proceed at Special Term, Part II, at 10:00 A.M., on the day following publication of this decision or as otherwise stipulated by counsel.