[S.F. No. 24346. Apr. 28, 1983.]

WELFARE RIGHTS ORGANIZATION et al., Plaintiffs and Appellants, v. HORIA CRISAN, as Director, etc., Defendant and Respondent.

**COUNSEL**

Daniel L. Siegel, Michael R. Bush, Alan Lieberman and Andrew T. Holcombe for Plaintiffs and Appellants.

Thomas V. Siporin, John Fillion, Jordan Rossen, Stephen P. Berzon, Michael Rubin, Fred H. Altshuler, Marsha S. Berson, Altshuler & Berzon, H. David Grunbaum and Susan L. Bloom as Amici Curiae on behalf of Plaintiffs and Appellants.

Delbert M. Siemsen and Daniel V. Blackstock, County Counsel, Leo A. Battle and Albrecht, Mims & Battle for Defendant and Respondent.

## OPINION

**KAUS, J.**—The issue is whether communications between welfare claimants and lay representatives authorized to represent them in administrative fair hearings under the aid to families with dependent children (AFDC) program are privileged. We conclude that they are.

The Butte County Social Welfare Department obtained a subpoena and a subpoena duces tecum directing Clayton Beltz, a Welfare Rights Organization worker, to testify and produce documents at an administrative fair hearing that had been requested by Marsha Levine and David Green. The information sought consisted of past communications between Beltz and Levine and Green "regarding legal advice" Beltz had given them in connection with an earlier AFDC fair hearing. Levine and Green had authorized Beltz to be their lay representative and had believed and intended their consultation with him in that capacity to be confidential.

Levine, Green, Beltz and the Welfare Rights Organization filed an action for injunctive and declaratory relief in superior court against Horia Crisan, as Director of the Butte County Social Welfare Department. The court issued a temporary restraining order enjoining defendant from seeking the evidence of the lay representative-client communications. Thereafter, however, it ruled that the communications were not protected by any evidentiary privilege, denied a preliminary injunction and sustained defendant's demurrer without leave to amend. This appeal is from the subsequent judgment of dismissal.

Plaintiffs contend that a privilege is constitutionally required and that the Evidence Code therefore cannot be read to preclude it. They base their argument on state and Fourteenth Amendment due process, as well as the federal Constitution's supremacy clause—arguing that certain federal regulations require a confidentiality privilege for authorized lay representative-client communications in connection with AFDC administrative fair hearings.

Evidence Code section 911 states the general rule: "Except as otherwise provided by statute: (a) No person has a privilege to refuse to be a witness. (b) No

person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object or other thing. (c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object or other thing." This rule applies to administrative hearings as well as court hearings. (Evid. Code, § 901.)

■ In section 911 of the Evidence Code, the Legislature clearly intended to abolish common law privileges and to keep the courts from creating new nonstatutory privileges as a matter of judicial policy. (Evid. Code, § 12, subd. (c); *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 539-540 [113 Cal.Rptr. 897, 522 P.2d 305].) Thus, unless a privilege is expressly or impliedly based on statute, its existence may be found only if required by constitutional principles, state or federal. As will appear, we conclude that in the situation we confront, a privilege comparable to the attorney-client is impliedly provided by statute. We therefore do not reach the question of whether it is also constitutionally required.

AFDC is a federal program in which states may participate by submitting a plan that conforms to the Social Security Act and federal regulations. (*Burns* v. *Alcala* (1975) 420 U.S. 575 [43 L.Ed.2d 469, 95 S.Ct. 1180].) The federal regulations set forth detailed requirements for state plans. Among these is one that the plan provide for a system of hearings which meets the due process standards articulated in *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011] and other criteria detailed in the regulations. (45 C.F.R. § 205.10.) The conclusion we reach on the privilege question before us derives from the nature of those hearings as authoritatively prescribed.

In *Goldberg*, the United States Supreme Court held that AFDC recipients have a federal due process right to an evidentiary hearing before their benefits are terminated. Although the hearing need not take the form of a judicial trial, it must provide a meaningful opportunity to be heard. The recipient must be provided with timely and adequate notice detailing the reasons for the termination. To be meaningful, "the opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." (*Goldberg* v. *Kelly*, *supra*, 397 U.S. at pp. 268-269 [25 L.Ed.2d at p. 289].) Thus, recipients must be allowed to present their case orally since written submissions are an unrealistic option for most welfare recipients (*id.*, at p. 269 [25 L.Ed.2d at p. 229]), and they must be given an opportunity to confront and cross-examine adverse witnesses. The court acknowledged the contributions to be made by counsel in delineating the issues, presenting the factual contentions in an orderly manner and conducting cross-examination; it therefore held that the recipient must be allowed to retain counsel if he so desires, though he need not be furnished with counsel. (*Id.*, at p. 270 [25 L.Ed.2d at p. 270].)

Although *Goldberg* spoke only of counsel, the federal regulations setting forth the requirements for state plans provide for lay representation as well. They state that every AFDC applicant or recipient "may be represented by an authorized representative, such as legal counsel, relative, friend or other spokesman, or he may represent himself." (45 C.F.R. § 205.10(a)(3)(iii).) This broad right of representation apparently is based upon recognition of the practical limitations on the ability of welfare recipients to obtain counsel. Generally they cannot afford to pay an attorney, and legal service organizations have never been able to meet all of the needs for free legal services.

■ Consistent with *Goldberg* and federal regulations, our statutes provide for a hearing with representation by counsel or by a lay person. Welfare and Institutions Code section 10950, enacted in 1965, states in pertinent part: "If any applicant for or recipient of public social services is dissatisfied with any action of the county department relating to his application for or receipt of public social services . . . he shall, in person *or through an authorized representative* . . . be accorded an opportunity for a fair hearing . . . ." (Italics added.) By using the term "authorized representative" rather than "counsel" or "attorney," the Legislature made it clear that claimants have a right to be represented by lay representatives as well as by members of the bar.[1]

The term "authorized representative" signifies an expansion of the right of representation that previously had been accorded welfare claimants. Before the enactment of section 10950, the applicable statute (Welf. & Inst. Code, § 104.1) had provided: "At the hearing the applicant or recipient may appear in person with counsel of his own choosing, or in person and without such counsel." The substitution of "authorized representative" for "counsel" suggests that the Legislature recognized that attorneys alone could not satisfy the representational needs of the state's welfare claimants and that assistance through representation was necessary to insure the meaningfulness of the "fair hearing" right provided by statute.

We resist the temptation to enrich the legal literature by yet another panegyric to the attorney-client privilege and its vital importance to the effective administration of justice.[2] (See, e.g., *Upjohn Co.* v. *United States, supra,*

[1] The regulations make this explicit. The state Department of Social Services Manual of Policies and Procedures, section 22-001.4 defines "authorized representative" as "an individual or organization that has been authorized by the claimant . . . to act for and represent the claimant in any and all aspects of the state hearing . . . ." Section 22-010 provides that when a claimant is represented by an authorized representative, all notices and decisions concerning the hearing shall be furnished to the representative as well as to the claimant.

[2] The most recent justification for the privilege came from the United States Supreme Court in *Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 389 [66 L.Ed.2d 584, 591, 101 S.Ct. 677]: "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and

449 U.S. 383, 389-390 [66 L.Ed.2d 584, 591; *Fisher* v. *United States* (1976) 425 U.S. 391, 403 [48 L.Ed.2d 39, 43, 96 S.Ct. 1569]; *People* v. *Meredith* (1981) 29 Cal.3d 682, 690-691 [175 Cal.Rptr. 596, 631 P.2d 30]; *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 751-753 [57 Cal.Rptr. 658, 598 P.2d 818]; *People* v. *Canfield* (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633]; *Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 506-507 [267 P.2d 125, 268 P.2d 722]; *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 234-235 [231 P.2d 26, 25 A.L.R.2d 1418]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 593 [113 Cal.Rptr. 561].) Suffice it to say that the considerations which support the privilege are so generally accepted that the Legislature must have implied its existence as an integral part of the right to representation by lay persons. Otherwise that right would, in truth, be a trap by inducing confidential communications and then allowing them to be used against the claimant. We do not attribute such a sadistic intent to the Legislature.[3]

We said nearly 70 years ago: "[W]hatever is necessarily implied in a statute is as much part of it as that which is expressed." (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].) This principle has been applied many times. Examples are found in *De Witt* v. *San Francisco* (1852) 2 Cal. 289, 296 (legislation authorizing erection of courthouse necessarily embraces power to purchase land on which to erect it); *State of California* v. *Poulterer* (1860) 16 Cal. 514, 531 (where statute imposes obligation on party to pay money to particular persons, without providing remedy for its recovery, an action for debt will be implied); *Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997, 1001 [84 Cal.Rptr. 615] (city charter provisions imply rights to notice and hearing for employees not expressly classified as probationary). Thus, in applying the rule of necessary implication in this case, we merely follow well-established tradition.

The fact that lay representatives are not licensed or subject to regulation by professional rules of conduct does not preclude a finding of legislative intent to

---

thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. As we stated last Term in *Trammel* v. *United States*, 445 U.S. 40, 51 (1980): 'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.' And in *Fisher* v. *United States*, 425 U.S. 391, 403 (1976), we recognized the purpose of the privilege to be 'to encourage clients to make full disclosure to their attorneys.' This rationale for the privilege has long been recognized by the Court, see *Hunt* v. *Blackburn*, 128 U.S. 464, 470 (1888) (privilege 'is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure')."

[3]As Justice Broussard noted at oral argument, the Legislature could not have intended that the only sound advice the authorized representative could give was, "Don't talk to me."

accord them a confidentiality privilege, for even the lawyer-client privilege set forth in Evidence Code section 950 et seq. does not require that the purported lawyer actually be one. Section 950 defines "lawyer" for purposes of the privilege as meaning "a person authorized, *or reasonably believed by the client to be authorized*, to practice law in any state or nation." (Italics added.)

Accordingly, we construe Welfare and Institutions Code section 10950 as including a guarantee of confidentiality in its extension of the right of representation to include representation by lay persons as well as by counsel in connection with welfare fair hearings. The absence of a single earlier case on this issue provides substantial support for our conclusion: during the 17 years in which the right of lay representation in welfare hearings has existed in California, the implicit guarantee of confidentiality has apparently gone unquestioned.

Our interpretation of Welfare and Institutions Code section 10950 as providing an implicit guarantee of confidentiality of lay representative-client communications is also supported by the rule that courts are to construe statutes in a manner which avoids constitutional difficulties. (See, e.g., *United States* ex rel. *Atty. Gen.* v. *Delaware & Hudson Co.* (1909) 213 U.S. 366, 407-408 [53 L.Ed. 836, 848-849, 29 S.Ct. 527]; *White* v. *Valenta* (1965) 234 Cal.App.2d 243, 249 [44 Cal.Rptr. 241, 13 A.L.R.3d 1271]; *Kramer* v. *Municipal Court* (1975) 49 Cal.App.3d 418, 424 [122 Cal.Rptr. 672].) Having decided the issue on statutory grounds, we can leave the due process and supremacy issues for another day.[4]

There are, of course, other statutes which permit lay representation before certain tribunals. (E.g., Unemp. Ins. Code, § 1957; Lab. Code, § 5700.) Nothing we have said with respect to section 10950 of the Welfare and Institutions Code demands an identical interpretation of those other enactments, each of which will have to be examined against its own statutory, historical and constitutional background.

The judgment of dismissal is reversed.

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., and Hamlin, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent from the majority's recognition of a novel evidentiary privilege protecting communications between welfare claimants and nonattorneys authorized to represent them at administrative fair hearings. As the majority acknowledges (*ante*, p. 769), such creation of a new

---

[4]Also left for the future are questions concerning the scope of the privilege. Answers to such problems will obviously depend, in large part, on the severely limited function of a lay "authorized representative," acting under section 10950 of the Welfare and Institutions Code.

*Assigned by the Chairperson of the Judicial Council.

privilege directly contravenes well established authority in this state limiting evidentiary privileges to those set forth in our statutes and expressly forbidding the judicial formulation of additional privileges even for what are perceived to be sound policy reasons. In my view, the well-reasoned opinion of Presiding Justice Puglia of the Court of Appeal, which follows with appropriate deletions and insertions,* correctly disposes of plaintiffs' assertion of the heretofore nonexistent privilege:

I

We begin our analysis with the Evidence Code provisions relating to privileges. The general rule of admissibility is stated in section 911 as follows: "Except as otherwise provided by statute: [¶] (a) No person has a privilege to refuse to be a witness. [¶] (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing. [¶] (c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object, or other thing." The foregoing rule applies to administrative proceedings such as the AFDC hearing in question. (Evid. Code, § 901.)

The communications here do not come within any of the particular privileges enumerated in the Evidence Code. (See §§ 930-1060.) Although the lay-authorized representative's functions are similar to those of an attorney in performing services for a client, the lay representative's communications with clients do not come within the lawyer-client privilege. Evidence Code section 950 specifically defines "lawyer" to mean "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Obviously, a lay advocate is not authorized to practice law. (See Bus. & Prof. Code, § 6060 et seq.) [Nor do plaintiffs assert that they were misled into "reasonably" believing that their lay representative was so authorized.]

It is well settled that the provisions in the Evidence Code relating to privilege are exclusive, supplanting any privileges previously available at common law; the courts are not free to modify them or create new privileges as a matter of judicial policy. (Evid. Code, § 12, subd. (c); *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 539-540 [113 Cal.Rptr. 897, 522 P.2d 305].)

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

Even if the courts were at liberty to draw upon judicial precedent in construing the limits of the attorney-client privilege as defined in the Evidence Code (see *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 160-161 [98 Cal.Rptr. 649, 491 P.2d 1]), the rule in other jurisdictions has been that the "privilege does not extend to communications between a client and administrative practitioners who are not attorneys, . . ." (McCormick on Evidence (2d ed. 1972) § 88, pp. 179, 180-181; 8 Wigmore on Evidence (McNaughton rev.ed. 1961) § 2300a, pp. 581-582; Annot. (1964) 96 A.L.R.2d 125, §§ 16-18; *Brungger* v. *Smith* (C.C.D. Mass. 1892) 49 Fed. 124, and *United States* v. *United Shoe Machinery Corporation* (D.Mass. 1950) 89 F.Supp. 357, 358-360 [nonattorney patent agents]; *Falsone* v. *United States* (5th Cir. 1953) 205 F.2d 734, 740-741, and *United States* v. *Zakutansky* (7th Cir. 1968) 401 F.2d 68, 70-71, cert. den. (1969) 393 U.S. 1021 [21 L.Ed.2d 565, 89 S.Ct. 628] [nonattorney accountants]; see also, *Baird* v. *Koerner* (9th Cir. 1960) 279 F.2d 623, 627.) Moreover, other jurisdictions having occasion to construe the scope of the privilege as provided by specific statute likewise have found communications to nonattorney administrative practitioners not to be privileged. (*Kent Jewelry Corp.* v. *Kiefer* (1952) 202 Misc. 778 [113 N.Y.S.2d 12, 15-17] [patent agent registered to practice before the patent office]; *Hunt* v. *Maricopa Cty. Emp. Merit System Com'n* (1980) 127 Ariz. 259 [619 P.2d 1036, 1041] [lay representative of county employee].)

Thus, plaintiffs must rely on other statutory or constitutional authority to establish an AFDC claimant-lay representative privilege of confidentiality. (See Evid. Code, §§ 911, 230.)

## II

Plaintiffs and amicus curiae first rely on federal regulations governing AFDC administrative hearings to supply the missing privilege. Thus, they assert that the phrase, "Except as otherwise provided by statute," as contained in Evidence Code section 911 should be interpreted to embrace these federal regulatory provisions or, alternately, that the applicable federal regulations preempt any conflicting state law precluding a privilege by virtue of the supremacy clause of the United States Constitution (U.S. Const., art. VI, § 2).

The regulatory provisions upon which plaintiffs and amicus base these alternate contentions are found in 45 Code of Federal Regulations, section 205.10. They cite as controlling section 205.10(a)(3)(iii), which provides that every AFDC applicant or recipient "may be represented by an authorized representative, such as legal counsel, relative, friend, or other spokesman, or he may represent himself . . . ." In addition, they cite language in section 205.10(a)(13)(iv) and (v) as follows: "The claimant, or his representative, shall have an adequate opportunity: . . . To establish all pertinent facts and circumstances"

and "To advance any arguments without undue interference; . . ." (See similarly Welf. & Inst. Code, § 10950.) Maintaining that these provisions establish an adversary hearing system whereby the nonattorney authorized representative stands on a similar footing with legal counsel, plaintiffs argue that the right to select a lay representative and the opportunity to develop facts and advance arguments after exercising that right would be "shattered" if a representative-claimant privilege did not apply.

Similar arguments have been advanced in recent federal cases involving patent agents who practice before the United States Patent Office. In *Sperry* v. *Florida* (1963) 373 U.S. 379 [10 L.Ed.2d 428, 83 S.Ct. 1322], the United States Supreme Court reversed a Florida decision holding that a patent agent who met specified qualifications and was registered with the patent office but who was not a licensed Florida attorney could not perform patent services within the State of Florida. In reversing, the high court reasoned: Although the patent practitioner's services constitute the unauthorized practice of law under Florida law, federal statutes and regulations which qualify both registered patent agents and attorneys to engage in certain patent activities preempt the conflicting state law; hence, the state is powerless to deny the agent a supreme right granted by federal law.

Subsequent federal cases addressing the subject of privilege for nonattorney patent agent communications in light of the *Sperry* decision are divided. The majority view is that there is no privilege. (*Joh. A. Benckiser G.m.b.H., Chem. F.* v. *Hygrade Food Prod. Corp.* (D.N.J. 1975) 253 F.Supp. 999; see also *Duplan Corporation* v. *Deering Milliken, Inc.* (D.S.C. 1974) 397 F.Supp. 1146, 1169.) The minority position holds that the attorney-client privilege must be made available to communications of *registered* patent agents in order not to frustrate the congressional scheme. (*In re Ampicillin Antitrust Litigation* (D.D.C. 1978) 81 F.R.D. 377, 393-394 and cases cited at p. 392.) Said the court in the *Ampicillin* case: "That freedom of selection, protected by the Supreme Court in *Sperry,* would . . . be substantially impaired if as basic a protection as the attorney-client privilege were afforded to communications involving patent attorneys but not to those involving patent agents." (Fn. omitted; *id.,* at p. 393.) The *Ampicillin* court, however, carefully limited the availability of the privilege to agents registered with the patent office and emphasized the fact that these agents are on equal footing with a patent attorney because they are subject to similar professional and ethical standards set by the patent office. (*Id.,* at pp. 393-394, fn. 32; see also 8 Wigmore, *supra,* § 2300a, at p. 582.)

In the present situation there are no professional or ethical standards or licensing or registration requirements set by an appropriate administrative body which would place nonattorney representatives of AFDC claimants on a par professionally with lawyers practicing in the same setting. Instead, the federal

regulations here permit AFDC claimants to authorize whomever they choose to act as their hearing representative. If we were to read these same federal regulations so broadly as to require the availability of privileged communications with any authorized representative, there would be no real limitation on nor clear definition of when and with whom the privilege might apply. Hence, we will not go beyond the rationale of the *Ampicillin* case and interpret the AFDC federal regulations, silent on the subject of privilege, nonetheless to require one.

### III

Citing *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011] and *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], plaintiffs assert that an AFDC claimant's constitutional due process right to a fair hearing prior to any administrative denial or reduction in benefits also mandates the recognition of a privilege against compelled disclosure of lay representative-claimant communications. They argue that the individual claimant's substantial interest in welfare benefits, the value of authorized representative-claimant confidentiality, and the government's interest in protecting such confidentiality outweighs any countervailing state interests in not allowing a privilege. This argument also fails.

The *Goldberg* decision and its progeny were concerned with the right to be heard and accompanying procedures safeguarding that right prior to governmental curtailment of substantial individual rights. In *Goldberg,* the court specifically held that the interest of an eligible AFDC recipient in uninterrupted receipt of public assistance, coupled with the state's interest that such payments not be erroneously terminated, outweighed any opposing state interest in not providing a pretermination hearing with the accompanying rights to cross-examine and confront adverse witnesses and to retain counsel. Yet the court neither held nor implied that formal evidentiary rules would be required in such a setting as a matter of due process. In fact, it specifically stated: "Informal procedures will suffice; in this context due process does not require a particular order of proof or mode of offering evidence." (397 U.S., *supra*, at p. 269 [25 L.Ed.2d at p. 300].)

We have found no case where the attorney-client privilege has been associated with a constitutionally based opportunity to be heard when civil interests such as the one here are involved. [Fn. omitted.] As we have discussed, the origins of the privilege are in the common law (see 8 Wigmore, *supra,* § 3390, pp. 542-545), and its current status is purely statutory, existing only so far and in favor of such persons as the legislative power may declare. It necessarily follows that any analogous lay advocate-client privilege also lacks constitutional underpinnings. Merely because federal regulations permit a

welfare applicant or recipient to authorize a lay advocate instead of an attorney as a hearing representative, procedural due process does not require that a privilege be available for communications transmitted within the course of that relationship. There is no unfairness of constitutional dimension.

We are neither unaware of nor insensitive to the policy considerations which militate in favor of extending the attorney-client privilege to the lay representative-claimant relationship in the administrative fair hearing context. However, we are not at liberty to say what *should* be with regard to the privilege of confidentiality. (See *Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d at p. 656; *Pitchess* v. *Superior Court, supra,* 11 Cal.3d at pp. 539-540.) As we have seen, it is now the prerogative of the Legislature or Congress to make such policy decisions and to delineate what *shall* be the nature and scope of the attorney-client privilege. In the future, that legislative power may well delimit the availability of a privilege to lay advocates having some professional and formally supervised status. (See 8 Wigmore, *supra,* § 2300a, p. 582.) There is no evidence that the lay representative here would so qualify. As aptly stated by the trial court judge: "One is reminded that the original definition of a 'psychotherapist' as set forth in Evidence Code section 1010 was amended in 1970 to include clinical social workers and school psychologists and again amended in 1972 to include marriage, family and child counselors. These professionals probably felt that their communications were confidential but it took legislative action to accord the privilege which, undoubtedly, sound policy dictated." [End of Court of Appeal opinion.]

In my view, the majority errs in jettisoning the foregoing straightforward analysis of plaintiffs' claims. Instead, my colleagues wending their tortuous way around the statutory and decisional obstacles create, by judicial fiat, a new nonstatutory evidentiary privilege. While their praise of the attorney-client privilege (see *ante,* pp. 770-771, and fn. 2) is commendable, their failure to observe its limitation and to restrict its availability to *attorneys and their clients,* is not. A comparable new privilege for communications between nonattorneys and those whom they represent should not be fashioned judicially from supposed implication alone, but should await precise legislative expression.

I would affirm the judgment.