173 Cal.App.4th 1163 (2009)
___ Cal.Rptr.3d ___
JIM SMITH, as Special Administrator, etc., Plaintiff and Respondent,
v.
SANDRA SHEWRY as Director, etc., et al., Defendants and Appellants.
No. B207305.
Court of Appeals of California, Second District, Division Four.
April 21, 2009.
*1165 Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Leslie P. McElroy and Gala E. Dunn, Deputy Attorneys General, for Defendants and Appellants.
Health Advocates, Aaron J. Leibovic and Stephen Crane for Plaintiff and Respondent.

OPINION
WILLHITE, Acting P. J. 

INTRODUCTION
After being admitted to Stanford Medical Center (Stanford) for treatment of a terminal illness, Robert Darrough (Darrough) applied for Medi-Cal benefits and appointed a law firm, Health Advocates, LLP (Health Advocates), to represent him in all matters relating to that application. Following Darrough's death, his Medi-Cal application was denied. Health Advocates requested an administrative hearing under Welfare and Institutions Code section 10950 to contest that denial. The administrative law judge dismissed the request because Health Advocates had failed to comply with the requirement that it obtain authorization to pursue the matter from either Darrough's estate or his heirs. Health Advocates then obtained from the probate court the appointment of one of its attorneys as special administrator of Darrough's estate to pursue the Medi-Cal claim. Following that appointment, Health Advocates sought a rehearing of the decision dismissing its earlier request for an administrative hearing. The request for a rehearing was denied. Health Advocates responded by filing a petition for a writ of mandate in the superior court. The superior court issued the writ, ordering a rehearing on Darrough's application for Medi-Cal benefits.
*1166 We reverse. Darrough's authorization of Health Advocates to act as his agent was revoked by his death. Health Advocates was required to obtain new authorization from either Darrough's estate or his heirs to contest the denial of Darrough's Medi-Cal application. Health Advocates failed to obtain that authorization in a timely manner. Therefore, the trial court erred in issuing the writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

1. Application for Medi-Cal

On October 31, 2005, Darrough, suffering from a terminal illness, was admitted to Stanford. Darrough completed an application for Medi-Cal benefits on November 4, 2005, and on the same day signed a form appointing Health Advocates as his authorized representative regarding his Medi-Cal application. In its writ petition, Health Advocates describes itself as "a law firm that represents Stanford with regard to Medi-Cal collections."[1] The form recites that Darrough "retains, authorizes and empowers" Health Advocates "to represent [him] and act on [his] behalf as [his] authorized representative regarding [his] application for Medi-Cal ... eligibility and benefits, including completing and signing all application forms and related documents, and prosecution of all fair hearing and other administrative and judicial proceedings required for the enforcement of [his] rights." (Capitalization omitted.) The form further provides that Darrough "consent[s], authorize[s] and empower[s] Health Advocates to obtain and release all information from and to all private and public sources related to any benefits to which [he] may be entitled" and that Darrough agrees that the relevant public agencies would "direct all telephone calls, notices, forms, documents, correspondence, medical records and reports to Health Advocates." (Capitalization omitted.)
On November 8, 2005, the El Dorado County Department of Social Services (County) received Darrough's Medi-Cal application. Darrough died the next day, November 9. On December 6, 2005, County denied Darrough's application for Medi-Cal benefits because he had failed to provide some required information.

2. Administrative Proceedings

On March 3, 2006, Health Advocates filed a request for an administrative hearing. (See Welf. & Inst. Code, § 10950.) Its letter states, in pertinent part: *1167 "The above-referenced claimant [Darrough] has authorized us to request a Fair Hearing on his/her behalf. We disagree with the action taken by the County in denying our client's claim and respectfully request that a Fair Hearing be scheduled forthwith." Health Advocates attached a copy of the November 4, 2005 form signed by Darrough appointing it as his authorized representative.
However, shortly thereafter, Health Advocates, apparently recognizing that it could not rely upon Darrough's authorization to request the hearing, tendered another "Authorized Representative Form." This one, dated March 16, 2006, recited the applicant as "David B. Reil for Robert B. Darrough (Deceased)." (Capitalization omitted.) Reil had been a friend of Darrough's who had provided him with room and board for the previous five years. In addition, Reil had a durable power of attorney for the exclusive purpose of making health care decisions on Darrough's behalf.
On June 5, 2006, a hearing was conducted by an administrative law judge (ALJ). County urged that Health Advocates lacked standing to request the hearing. County cited several regulations found in the Manual of Policies and Procedures (MPP) promulgated by the State Department of Social Services.
Section 22-003.1 of the MPP provides: "A state hearing shall be available to a claimant who is dissatisfied with a county action and requests a hearing in the manner set forth below." Claimant is defined as the "person who has requested a state hearing and is or has been any of the following: [¶] ... [¶] A representative of the estate of a deceased applicant or recipient." (§ 22-001(c)(2)(C).) Section 22-004.5 goes on to state: "If the prospective claimant dies before filing a request for a state hearing, a request may only be filed by those individuals specified in Section 22-004.41." (Italics added.) Section 22-004.41 identifies those individuals as the executor or administrator of the estate if there is a probate proceeding or as an heir if there is no probate. (§ 22-004.41.)
Because Darrough died before a request was made for a hearing to contest County's denial of his Medi-Cal application and because Health Advocates was not a proper representative of Darrough's interests as defined by Section 22-004.41 of the MPP, County urged that Health Advocates lacked standing to request a hearing. (§ 22-054.3 ["A request for [a] hearing ... shall be dismissed by a written hearing decision when: [¶] ... [¶] .35 The person who requests the hearing does not have standing to request the hearing."].)
*1168 At the administrative hearing, Health Advocates acknowledged that "in order ... to proceed [with the request for a hearing, it] would have to have a new AR [authorized representative] form dated on or after the date of the notice of action signed by somebody who has standing to appoint us as AR." Health Advocates explained that first it had unsuccessfully tried to contact Darrough's mother; that next it had located one of Darrough's cousins but the individual was uncooperative; and that finally it had obtained the authorization from Reil.[2] Health Advocates stated that Reil had informed it that Darrough had left no estate.
The ALJ concluded that Health Advocates lacked standing, and, in an order filed on June 7, 2006, dismissed its request for a hearing. Primarily, the ALJ relied upon the MPP regulations to conclude that when "a prospective claimant dies before filing a request for state hearing, a request may only be filed by or on behalf of the decedent's estate by either (1) the legal representative of a decedent's estate; that is, the executor/executrix or administrator/administratrix; or (2) a relative." The ALJ found that the authorization form signed by Reil did not meet this criteria because "[i]t is undisputed that [Reil] is neither a legal representative of [Darrough's] estate nor a relative. [Reil] is therefore not a `claimant' under MPP Sections 22-001(c)(2)(C) and 22-004.5 and cannot appoint an Authorized Representative under MPP Section 22-085.1."
In addition, the ALJ relied upon section 22-085.1 of the MPP to find that the authorized representative form signed by Darrough on November 4, 2005, did not confer standing upon Health Advocates. That regulation provides: "The claimant may authorize a person or organization to represent him/her during all aspects of the hearing process by signing and dating a written statement to that effect .... If the claimant is not present at the hearing, the written statement authorizing a representative to act on behalf of the claimant for hearing purposes shall be signed and dated by the claimant on or after the date of the action or inaction with which the claimant is dissatisfied." (§ 22-085.1.) The ALJ explained: "The date of the county's denial of the Medi-Cal application was December 6, 2005, and it is undisputed that the date of death was November 9, 2005, prior to that denial." The ALJ therefore reasoned that because the November 4 authorization "was not signed and dated `on or after the date of the action or inaction with which the claimant is dissatisfied,' as required by MPP Section 22-085.1," the form could not confer standing on Health Advocates to request the hearing.
*1169 On June 21, 2006, Health Advocates filed a petition in the probate court to have Jim Smith (one of its employees) appointed as special administrator of Darrough's estate to pursue Darrough's claim for Medi-Cal benefits. (Prob. Code, §§ 8540, 8541, 8461, subd. (r).) A declaration from one of Health Advocates's attorneys averred that a review of all relevant records indicated that Darrough left "no next of kin."
On June 30, 2006, the superior court granted the petition. It appointed Smith as special administrator of Darrough's estate "for the sole purpose of allowing him to perform those acts which would or could lead to obtaining health care benefits on behalf of [Darrough]. [Smith] is granted no authority to disburse property, nor take possession of any assets. Special letters are issued for [the] limited purpose of obtaining Medi-Cal benefits for [Darrough]."
On July 11, 2006, Health Advocates sought a reopening of its request for a hearing on County's denial of Darrough's Medi-Cal application. Health Advocates urged that it had standing to do so because of the probate court's appointment of Smith as special administrator.[3]
The State Department of Health Services (Department), now known as the State Department of Health Care Services, denied the request by operation of law because it took no action within 15 days of receiving the request.[4]

3. Trial Court Proceedings

On March 14, 2007, Health Advocates, as counsel for Smith in his capacity as special administrator of Darrough's estate, filed a petition for a writ of mandate in the superior court. (Code Civ. Proc., § 1094.5.)[5] The *1170 petition contended that Department abused its discretion in denying Health Advocates's request for a rehearing because Health Advocates had produced "important new evidence of standing": the probate court's appointment of Smith as special administrator of Darrough's estate. The petition therefore sought a writ from the superior court directing Department to grant a rehearing on Darrough's application for Medi-Cal.
Department opposed the petition. In particular, it urged that Health Advocates's evidence to establish standing was actually evidence that, in the exercise of due diligence, Health Advocates could have produced when Health Advocates first requested a hearing. That is, Department argued that Health Advocates should have sought Smith's appointment as special administrator from the outset.
In its reply to Department's opposition, Health Advocates urged it had reasonably believed that Darrough's November 4 authorization permitted it to request the hearing in March 2006 and that once it learned that Department's position was that it lacked standing, it obtained the necessary authorization from the probate court.
The trial court issued a tentative ruling to grant the petition. It found that decisional and statutory law permitted Health Advocates, as Darrough's authorized representative, to request a hearing on Department's denial of his Medi-Cal application. Following a short hearing, the trial court granted Department's request to defer making its ruling and to permit supplemental briefing.
After receiving further briefing and conducting a second hearing, the trial court granted Health Advocates's petition. It explained:
"The [ALJ's] decision is arbitrary and capricious and is not supported by law or by any evidence.
"Welfare and Institutions Code section 10950 states that any person who is refused the opportunity to apply for public social services may, through an authorized representative, request and be accorded an opportunity for a state hearing.
"Darrough was refused an opportunity to complete his application for such benefits because he was dead by the time [Department] notified him that his application was incomplete.
*1171 "Health Associates, as Darrough's authorized representative, has standing to request a hearing for him. [Welfare Rights Organization v. Crisan (1983) 33 Cal.3d 766, 770 [190 Cal.Rptr. 919, 661 P.2d 1073].]
"Welfare and Institutions Code section 10950 contains no requirement that the authorized representative must be appointed AFTER the applicant's claim is denied. [Department] would have no power to add a requirement to the statute by means of a manual of procedures, even if that manual had been adopted as a regulation. [Department], however, makes no showing that the manual was adopted as a regulation in the manner required by law. The manual, however, if it was in fact promulgated by the Department of Health Services, constitutes evidence of an interpretation of the statute by the administrative agency that administers it. The interpretation, however, is not within the zone of reasonableness. It arbitrarily excludes the hospital that cared for Darrough during his last illness from the right to be reimbursed for such care, even if Darrough was indigent and therefore qualified under the Medi-Cal program to receive such care. There is no evidence in the Administrative Record that the legislature intended such a result, and no reason is given by [Department] why the legislature would do so....
"The court ... does not believe that the legislature intended the result sought by [Department] in this case. [Department's] position is that, because Darrough died five days after he appointed an authorized representative pursuant to Welfare & Institutions Code section 10950, and one day after he applied for Medi-Cal benefits, the hospital in which he died cannot be reimbursed for the cost of caring for him before his death unless it commences a probate proceeding to obtain the appointment of a special administrator to apply for such reimbursement.
"To be eligible for Medi-Cal benefits, a patient must be indigent, and by definition must not have an estate that requires probate. To require the patient's duly appointed representative to commence such a proceeding for the sole purpose of permitting a live person to complete the patient's application and to pursue the patient's administrative remedies to get it approved, serves no useful purpose that the court can see, and therefore was not intended by the legislature. The argument by [Department] that the Medi-Cal statute is for the benefit of patients, not providers, is sophistry. The statute demonstrates in numerous ways that the legislature realizes that it can deliver medical care to the indigent only by encouraging doctors and hospitals to provide it. By interpreting the statute to allow the state to stiff the hospital because of a contingency, the death of the patient during the application process, that there is no evidence that the hospital could have *1172 either foreseen or prevented, does not facilitate the delivery of healthcare to the indigent, nor does it responsibly control the cost of such care. Such interpretation only encourages hospitals to deny admittance to critically ill patients who are indigent, by increasing the cost of providing care to such patients because, if the patient dies, the hospital will have to hire a lawyer to commence a probate proceeding in order to obtain reimbursement....
"Nothing in this decision is meant to suggest that [Department] does not have the discretion to determine in the first instance whether Darrough was eligible for Medi-Cal benefits and whether the medical services provided to him by the hospital were medically necessary.
"A writ will issue commanding [Department] to determine those issues, and not to refuse to do so because [Health Advocates] do not have standing to present them."
This appeal by Department follows.

DISCUSSION

1. The Standard of Review

"The nature of a petition under section 1094.5 is to challenge a specific decision in an administrative hearing as to a particular individual." (Conlan v. Bonta (2002) 102 Cal.App.4th 745, 752 [125 Cal.Rptr.2d 788].) "The inquiry in such a case shall extend to the questions whether [among other things] there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent [here, Department] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) The trial court determined that Department had abused its discretion in refusing to grant Health Advocates's request for a rehearing. In making that determination, the relevant facts were not disputed. The parties disagreed, instead, about the proper interpretation of Darrough's November 4, 2005 authorization form, the regulations in the MPP, and the relevant statutory law. Department's appeal of the trial court's issuance of a writ of mandate therefore presents questions of law. Accordingly, we exercise de novo review of the trial court's decision granting relief to Health Advocates. (Professional Engineers in California Government v. Kempton (2007) 40 Cal.4th 1016, 1032 [56 Cal.Rptr.3d 814, 155 P.3d 226].) As we *1173 now explain, the trial court erred in finding that Department's denial of Health Advocates's rehearing request was an abuse of discretion.

2. The Authorized Representative Form Created an Agency Relationship

(1) To put the trial court's ruling in proper context, we begin with Darrough's November 4, 2005 designation of Health Advocates as his authorized representative. This designation included broad grants of authority to Health Advocates. Through it, Darrough created an agency relationship: Health Advocates became his agent in applying for and obtaining Medi-Cal benefits. (Civ. Code, § 2295 ["An agent is one who represents another, called the principal, in dealings with third persons."].) An agent's power, unless coupled with an interest in the subject of the agency, is terminated by the death of the principal. (Civ. Code, § 2356, subd. (a)(2).) Consequently, Darrough's death on November 9, 2005, ended the agency relationship and any authority Health Advocates had to act on his behalf.
Health Advocates[6] argues that the authorized representative form did not create an agency relationship. Health Advocates relies upon the rule that one essential characteristic of an agency relationship is that the principal has the right to control the agent's conduct concerning the matters entrusted to the agent. (See, e.g., Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp. (2007) 148 Cal.App.4th 937, 964 [56 Cal.Rptr.3d 177].) According to Health Advocates, "Darrough did not have the power to specifically direct Health Advocates as to how it should make application for his Medi-Cal benefits, deal with the Medi-Cal agency and carry out legal remedies in court to attain that end." Instead, "Darrough simply sought the assistance of an advocate that could help him obtain his benefits. He had no expertise at all as to the Medi-Cal regulations and he had no expertise as to how court proceedings were to be carried out."
We are not persuaded. In neither the administrative hearing nor the mandate proceeding did Health Advocates claim that it had no agency relationship with Darrough. Accordingly, it never produced any evidence to support the argument it now advances, and thus has forfeited the claim on appeal. In fact, at the administrative hearing, Health Advocates implicitly recognized that Darrough's death terminated its authority because it tendered the authorization form signed by Reil in an effort to establish its authority to request a hearing on County's denial of Darrough's Medi-Cal application.
*1174 (2) In any event, Health Advocates's argument fails. If accepted, it would mean, for instance, that a client does not create an agency relationship when retaining counsel because the client, in Health Advocates's words, does "not have the power to specifically direct [counsel] as to how it should ... carry out legal remedies in court" and has no legal expertise in the subject matter of the representation. The law does not have such a crabbed view of agency. "A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of the right varies. Thus, a person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." (Rest.3d Agency, § 1.01, com. c, p. 20.) In sum, the November 4, 2005 authorized representative form created an agency relationship that terminated when Darrough died five days later.[7]
(3) In the alternative, Health Advocates argues that concluding that death terminated the agency relationship contravenes the federal regulations governing Medi-Cal. The regulations, however, do not address that question. Rather, they provide that death does not terminate an applicant's claim and that a third party can continue to pursue the claim. Department does not disagree with that proposition. The point of contention is, instead, the nature of the authorization required for Health Advocates to continue to present the claim when, as here, the applicant dies before the claim is denied. The relevant federal regulations anticipate that if an applicant dies and the claim continues to be pursued, there will be compliance with applicable state law. For instance, 42 Code of Federal Regulations part 405.708 (2008) (effect of initial determination) and 42 Code of Federal Regulations part 405.710 (2008) (right to reconsideration) speak in terms of the right of the individual applicant "or, if such individual is deceased," the right of "the representative of such individual's estate." As explained below, in the next part of our opinion, state law provides for a procedure to be followed in that situation, a procedure Health Advocates failed to follow in a timely manner.
In a similar vein, Health Advocates argues that Department wishes to preclude a hospital from serving as an authorized representative for a *1175 Medi-Cal applicant. The assertion mischaracterizes Department's position. Department agrees such representation is proper, and insists only that specific protocol be followed when the applicant dies.

3. Welfare and Institutions Code Sections 10950 and 10965

(4) Because Darrough's death terminated his agency relationship with Health Advocates, the trial court erred in relying upon Welfare and Institutions Code section 10950 to support its ruling. The statute provides, in relevant part: "If any applicant for ... public social services is dissatisfied with any action of the county department relating to his ... application ..., he ... shall, in person or through an authorized representative, ... upon filing a request with the ... department [which] administers the public social service, be accorded an opportunity for a state hearing." (Italics added.) This statutory language uses the present tense and therefore presupposes that the aggrieved applicant is alive at the time the request for a hearing is made, whether made personally or through an agent.
The trial court concluded that Department, through section 22-004.5 of its MPP, arbitrarily imposed a requirement that another individual (a representative of Darrough's estate or one of Darrough's heirs) reappoint Health Advocates to continue to pursue the Medi-Cal application. This requirement, however, is necessitated by the principle that death terminates an agency relationship. Therefore, absent such a reappointment, Health Advocates was no longer Darrough's legal representative.
(5) Further, section 22-004.5 of the MPP is consistent with statutory law. Welfare and Institutions Code section 10965 provides: "Nothing in this chapter [governing administrative hearings on Medi-Cal applications] shall prevent the filing of the request for a hearing by the legal representative, or, if there is no authorized legal representative, by an heir of a deceased applicant or recipient, in behalf of the decedent's estate, to the end that rights not determined at the time of death shall accrue to the estate of the applicant or recipient."[8] Thus, contrary to what Health Advocates suggests and the trial court found, neither the applicant's estate nor the health care provider is left without a remedy when the applicant dies before a hearing can be requested to contest a postmortem denial of benefits. Rather, the estate or provider may secure the appointment of a legal representative who can request a hearing. We therefore conclude that the trial court erred when it held that Department's position that Health Advocates must follow the protocol set *1176 forth in Section 22-004.5 was "not within the zone of reasonableness." Department's position, in fact, reflected the pertinent legal principles and rules.

4. Gatica v. Illinois Dept. of Public Aid Does Not Support Health Advocates

Health Advocates's reliance upon Gatica v. Illinois Dept. of Public Aid (1981) 98 Ill.App.3d 101 [53 Ill.Dec. 488, 423 N.E.2d 1292] (Gatica) to support the trial court's judgment is misplaced. While Gatica is superficially similar to this case, there are significant differences.
The factual similarities are the following. Gatica was admitted to the hospital and applied for medical aid from the Illinois Department of Public Aid (IDPA). Gatica died before his application could be completely processed. After his death, IDPA denied the application. The hospital requested a hearing to contest that denial. The hospital relied upon the fact that Gatica had (orally) authorized one of its employees to represent him in all matters relating to his application for medical aid. The hearing officer dismissed the hospital's claim, finding the hospital had insufficient authorization to contest IDPA's denial of Gatica's application. (Gatica, supra, 423 N.E.2d at pp. 1293, 1294.) Here the similarities between the two cases end.
Unlike this case, Illinois had no administrative regulation or statute providing how to proceed if the patient died before an application for medical aid was denied. (Gatica, supra, 423 N.E.2d at p. 1296.) Further, there was evidence that prior to that particular case, IDPA had customarily permitted the hospital to pursue an appeal without written authorization when the patient had died prior to denial of the application. (Id. at pp. 1296-1297.) The appellate court therefore remanded the case "for additional consideration and findings concerning whether IDPA had previously employed an informal and more practical rule with which [the hospital] had complied, and whether IDPA is bound by this prior rule." (Id. at p. 1297.) Here, in contrast, Health Advocates does not argue that previously Department had permitted it to seek a hearing based upon an authorization form executed by a deceased client before the claim was denied.
Significantly, Gatica recognized the propriety of requiring the hospital to abide by state probate rules. Gatica held that if following remand it was determined that IDPA was not bound by any informal procedure, then the hospital would be required to apply to the probate court for appointment of *1177 an administrator so that an estate could be opened and its claim resolved. (Gatica, supra, 423 N.E.2d at p. 1298.)

5. Health Advocates Did Not Present New Evidence Requiring Grant of a Rehearing

(6) Finally, Health Advocates argues that it produced new evidence requiring Department to grant a rehearing, and that the trial court's judgment can be upheld on that ground. We disagree. In the mandate proceeding, Health Advocates relied upon subdivision (e) of Code of Civil Procedure section 1094.5 to argue that Department had abused its discretion in denying its rehearing request. The statute permits the trial court to grant relief if it "finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced ... at the hearing before respondent [here, Department]."[9] The evidence Health Advocates relied uponthe probate court's June 30, 2006 appointment of Smith as special administrator of Darrough's estatedoes not meet this statutory definition. Department correctly notes that there is no reason that Health Advocates could not have obtained this court order before requesting the hearing in March 2006. (See, e.g., Lechuza Villas West v. California Coastal Com. (1997) 60 Cal.App.4th 218, 234 [70 Cal.Rptr.2d 399].) Health Advocates certainly recognized the need to do so. Its attempt to use the authorization signed by Reil indicates that it suspected that Darrough's authorization was no longer sufficient. Further, as already explained, the law provides a specific procedure to be followed when the claimant dies before a hearing can be requested. (Welf. & Inst. Code, § 10965; §§ 22-004.5 & 22-004.41 of the MPP.) And, based upon this record, the procedure does not appear to be time consuming. Once Health Advocates filed the appropriate petition in the probate court, it took only nine days for the court to grant it. In light of all of these factors, we disagree with Health Advocates's passing suggestion that we should excuse its failure to timely acquire the appropriate order from the probate court because it "was not apprised that [Department] would require [adherence to these rules] until it reached the [June 5, 2006 administrative] hearing." In conclusion, Health Advocates did not present new evidence that would justify granting its petition.

*1178 DISPOSITION
The judgment (order granting petition for a writ of mandate) is reversed. Appellant shall recover its costs on appeal.
Manella, J., and Suzukawa, J., concurred.
NOTES
[1] In its brief on appeal, Health Advocates states that it "had a contract with Stanford to assist inpatients who did not have the assets to pay for medical bills with applications for Medi-Cal assistance."
[2] Health Advocates conceded that Reil's durable power of attorney had expired with Darrough's death.
[3] Section 22-065 of the MPP sets out the procedure to request a rehearing. In relevant part, it provides that if the request is made to permit presentation of additional evidence, the party shall describe the additional evidence and "[s]tate why it was not previously introduced." (§ 22-065.122.)
[4] At that time, Welfare and Institutions Code former section 10960 provided that if Department did not take action within the time allowed (15 days), "the request shall be deemed denied." The statute has since been amended to require "[t]he notice granting or denying the rehearing request [to] explain the reasons and legal basis for granting or denying the request for rehearing." (Welf. & Inst. Code, § 10960, subd. (c).)
[5] Welfare and Institutions Code section 10962 provides, in relevant part: "The applicant or recipient..., within one year after receiving notice of the director's final decision, may file a petition with the superior court, under the provisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case."
[6] Although Smith is the nominal respondent on this appeal, we refer to Health Advocates because it not only proffered the brief on Smith's behalf but is the real party in interest in regard to the issues raised.
[7] Department urges that because Darrough's death on November 9, 2005, terminated the agency, Health Advocates's March 3, 2006 request for a hearing was ineffective. From that, Department argues that Health Advocates "cannot request a rehearing on a matter as to which [it] had no authority to request the initial hearing." In addition, because a hearing must be requested "within 90 days after the order or action complained of" (Welf. & Inst. Code, § 10951, subd. (a)), Department argues that Health Advocates's request for rehearing made on July 11, 2006, 217 days after County denied Darrough's Medi-Cal application, was untimely. We need not decide these points because we conclude Department did not abuse its discretion in denying the rehearing request.
[8] Department raised this statute in the mandate proceeding. The trial court did not address it and Health Advocates's appellate brief does not discuss it.
[9] Welfare and Institutions Code section 10960 gives a party the right to request a rehearing of the ALJ's decision. At the time of the mandate proceeding (2007), the statute did not specify the grounds for seeking rehearing. In 2008, the statute was amended to set forth multiple grounds for rehearing. One such ground is: "Newly discovered evidence, that was not in custody or available to the party requesting rehearing at the time of the hearing, is now available and the new evidence, had it been introduced, could have changed the hearing decision." (Welf. & Inst. Code, § 10960, subd. (b)(7).)